ROSE *v.* STATE.

## Opinion delivered October 8, 1906.

1. FORGERY—DEFENSE.—It is no defense to a prosecution of one for forgery of his father's name to a bank check that he in good faith believed that his father would pay the check in order to protect him. (Page 223.)

2. SAME—PRESUMPTION AS TO INTENT.—Where the name of a person is forged to a check, the law presumes the intention to defraud the person whose name is forged, in the absence of any proof to the contrary. (Page 224.)

Appeal from Searcy Circuit Court; *E. G. Mitchell,* Judge; affirmed.

*Robert L. Rogers, Attorney General,* and *G. W. Hendricks,* for appellee.

Appellee, *pro se.*

RIDDICK, J. The defendant, J. D. Rose, was indicted and convicted in the Searcy Circuit Court for the crime of uttering and publishing a forged instrument with intent to obtain the property of one John Rose. He was sentenced to two years' imprisonment in the State penitentiary. The evidence showed conclusively that the defendant forged the name of his father, John Rose, to an order addressed to the cashier of the Marshall Bank, requesting him to let J. D. Rose, the defendant, have sixty-five dollars, and to charge it to the account of John Rose, and in that way obtained sixty-five dollars from the bank. Soon after the defendant received the money he started for the Indian Territory in company with a young girl, seventeen years of age, whom he had induced to accompany him, leaving behind him a wife and six children without means of support. After he had got out of Searcy County, he heard that a reward had been offered for his arrest. He thereupon, of his own accord, surrendered to the sheriff of an adjacent county, and was by him carried back to Searcy County.

On the trial the father of the defendant testified that the defendant had no authority whatever to sign his name to such order. The defendant also took the stand, and testified in his own behalf. He admitted that he signed his father's name to the order which he presented to the bank as genuine, and in that way obtained the money from the bank. Continuing, he said: "I signed his name

to the check and also the names of two witnesses, pretending to show that the check was my father's. I wanted to get the money, and thought the bank would want two witnesses. The witnesses did not know I signed their names. I did not tell my father about getting his money after I got it and went home. I left soon after this with the girl, and traveled on foot part of the way. This all occurred in Searcy County, Arkansas, and within three years before I was indicted. I want to withdraw that part of my evidence I gave on direct examination to the effect that I signed papers for my father and did business for him. I never did business for him. I never signed but one check, and that was in his presence and for him. I had no authority to get his money, yet I wrote the check, signed his name and the names of two witnesses for the purpose of getting the money, and I did get it. Still I did not believe he would prosecute me. I don't think so now if it had not been he thought I had gone away forever and left my wife and six children for him to support. He did care for them during my absence."

It is not necessary to look to the evidence introduced by the State, for this testimony of the defendant himself makes out a clear case against him, and fully sustains the indictment. The only thing that can be said in his favor is that he seems to have made a candid statement. He admits that he signed his father's name to the order on the bank without authority, anl also forged the names of two persons purporting to be witnesses to the signature of his father. But he says that at the time he did so he thought his father would pay the order and not prosecute him. But, even had his father done so, the act of the defendant would still have been criminal. The crime charged in the indictment was complete when he passed this forged order and obtained the money from the bank, and no act of his father could have made it less criminal.

Counsel for the defendant asked the court to instruct the jury that, if the defendant at the time he wrote the order to the Marshall Bank did it in good faith, believing that his father would pay the same, and had good reason to believe that he would pay it, then the defendant would not be guilty, even though his father refused to pay it. But this instruction was clearly misleading. The testimony of both the defendant and his father shows that he

had no authority to sign his father's name to such an order, and that defendant knew this at the time he did so. He therefore did not act in good faith, and, as we have stated, the fact that he thought his father would pay the check in order to protect him did not make his act the less criminal.

This testimony of the defendant shows also that his intention was to obtain the money of his father, and not that of the bank, for he expected that his father would pay the order and say nothing. It sustains the allegation of the indictment that his intention was to fraudulently obtain the property of his father. The court therefore did not err in refusing to instruct the jury that they should acquit the defendant if they believed that he intended to obtain the money of the bank, and not that of his father, because there was no evidence to sustain this theory of the case. Not only the testimony of the defendant shows that he intended to get the money of his father in this way, but, according to the authorities, it seems to be immaterial whether he actually intended to cheat his father or not. "Generally," says Mr. Bishop, "there are two persons who may legally be defrauded; the one whose name is forged, and the one to whom the forged instrument is to be passed; and so the indictment may lay the intent to defraud either of these, and proof of an actual intent to pass as good, though there be shown no actual intent to defraud the particular person, will sustain the allegation. 2 Bishop, Crim. Law (4 Ed.), § 555. In such cases the law presumes the intention to defraud the person whose name is forged, when the evidence does not show to the contrary. *Commonwealth* v. *Butterick,* 100 Mass. 17; *Commonwealth* v. *Star,* 4 Allen (Mass.), 304; *Regina* v. *Cooke,* 8 C. & P. 586; 2 Bishop, New Crim. Law, § 597.

The instructions given by the court fairly covered the law of the case, and under the facts in this case there was no error in refusing those asked by the defendant.

Judgment affirmed.